HANSON BRIDGETT LLP
ANDREW W. STROUD, SBN 126475
astroud@hansonbridgett.com
500 Capitol Mall, Suite, 1500
Sacramento, California 95814
Telephone:     (916) 442-3333
Facsimile:     (916) 442-2348

HANSON BRIDGETT LLP
RAYMOND H. SHEEN, SBN 194598
rsheen@hansonbridgett.com
CANDICE P. SHIH, SBN 294251
cshih@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:     (415) 777-3200
Facsimile:     (415) 541-9366

Attorneys for Plaintiff
AMERICAN PACIFIC MORTGAGE
CORPORATION

KAUFMAN DOLOWICH & VOLUCK, LLP
Stefan R. Dandelles (IL ARDC #6244438), *pro hac vice*
sdandelles@kdvlaw.com
135 S. LaSalle Street, Suite 2100
Chicago, Illinois 60603
Telephone: (312) 646-6742
Facsimile: (312) 759-0402

Attorneys for Defendant
ASPEN SPECIALTY INSURANCE
COMPANY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| AMERICAN PACIFIC MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ASPEN SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:17-CV-02065-TLN-AC<br><br>**STIPULATED PROTECTIVE ORDER RE FORENSIC IMAGES** |

Plaintiff American Pacific Mortgage Corporation ("APM") and Defendant Aspen Specialty Insurance Company (as more fully defined below, "Aspen") (collectively, the "Parties"), by and through their respective attorneys of record, stipulate and agree as follows:

WHEREAS, in this action, APM alleges, *inter alia,* the following:

- Beginning on or about August 24, 2015, an APM employee (the "APM Employee") received emails that purportedly came from APM's then-CEO, Kurt Reisig.

- In the emails, the imposter (the "Imposter CEO") provided information regarding an alleged transaction that was on the verge of closing. The Imposter CEO instructed the APM Employee to make a wire transfer to a bank account, and advised that account details would be provided by a lawyer (the "Fake Lawyer") retained by the Imposter CEO. Over the course of a week, the Imposter CEO and the Fake Lawyer provided the APM Employee with additional information and requested several wire transfers. The APM Employee proceeded to make the wire transfers.

- However, the transaction was a fiction, and the emails in question were not sent by APM's CEO or a lawyer retained by APM. As a result of this fraudulent scheme, APM has suffered substantial losses in excess of $75,000;

WHEREAS, APM represents that in September 2015, APM retained a consultant to make copies, also known as forensic "images," of certain computers and other electronic devices of the APM Employee and certain other APM personnel;

WHEREAS, in this insurance coverage dispute, APM contends that Aspen owes a duty to indemnify APM for losses that APM allegedly suffered in connection with the incident summarized above (the "Incident"), and Aspen disputes that contention;

WHEREAS, in this lawsuit, Aspen has requested the production of the forensic images, and in response, APM has agreed to produce images of (1) the office computer and cellphone of the APM Employee and (2) the office computer of a second APM employee (collectively, the "Forensic Images"), subject to the terms and conditions of this Protective Order;

WHEREAS, APM represents that the Forensic Images contain information and documents that may be protected by the attorney-client privilege, the work product doctrine, rights to privacy, and other privileges and protections;

WHEREAS, Aspen has served document requests on APM in this action, and APM has advised Aspen that in responding to those requests, APM searched the Forensic Images and produced responsive, non-privileged documents from the Forensic Images;

WHEREAS, Aspen seeks the Forensic Images to conduct a forensic investigation of its own, and not for the purpose of searching the Forensic Images for responsive, non-privileged documents;

WHEREAS, APM will produce the Forensic Images if and only if (1) information and documents on the Forensic Images, together with all information, documents, and material derived therefrom, retains any applicable protections under the attorney-client privilege, the work product doctrine, rights to privacy and any other privilege or protection; and (2) the Forensic Images and the contents thereof are handled in accordance with the other terms and conditions of this Order.

WHEREFORE, the Parties agree as follows:

1. <u>DEFINITIONS</u>

1.1. "Aspen" means defendant Aspen Specialty Insurance Company and all of its officers, directors, employees, consultants, retained experts, in-house counsel and outside counsel (and their support staffs).

1.2 "Aspen Individual" means all individuals falling within the definition of Aspen, as well as any other person affiliated with or retained by Aspen Specialty Insurance Company or its outside counsel who is permitted to receive the Forensic Images and/or the Information contained in or on the Forensic Images pursuant to paragraphs 5.2 and 5.3 of this Order.

1.3 Challenging Party: a Party that challenges the designation of Information under this Order.

1.4. Counsel (without qualifier): Outside Counsel of Record and In-House Counsel (as well as their respective support staff).

1.5. Designating Party: a Party that designates Information as Protected Information under this Order.

1.6 "Employees": the APM Employee and the second APM employee whose office computer APM has agreed to produce pursuant to this Protective Order.

1.7    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party, and (3) at the time of retention, is not anticipated to become an employee of a Party.

1.8    Information: means any information, data, code or material of any kind or type that is in or on the Forensic Images.

1.9.   In-House Counsel: attorneys who are employees of a party to this action (as well as their support staff).  In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

1.10   Non-Protected Information:  Information other than Protected Information.

1.11.  Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

1.12   Party: any party to this action, including all of its officers, directors, employees, In-House Counsel, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

1.13.  Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

1.14.  Protected Information:  trade secrets; proprietary information; attorney work product; privileged communications between APM and its counsel; privileged communications between the Employees and their respective counsel (if any); Social Security Numbers; Passport numbers; Drivers License Numbers; login names and password information; security codes, passcodes or access codes; personal financial information, including credit card and bank account numbers; medical information or information regarding health or healthcare; genetic information; and information regarding a person's marriage, divorce, children, or personal life.

2.    SCOPE

The protections conferred by this Stipulated Protective Order cover not only the Forensic Images, but also (1) any Information copied or extracted from the Forensic Images; (2) all copies, excerpts, summaries, or compilations of the Forensic Images or the Information in or on the Forensic Images; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal the Forensic Images or the Information in or on the Forensic Images. However, the protections conferred by this Order do not cover any Information that is in the public domain at the time of disclosure to Aspen or that becomes part of the public domain after its disclosure to Aspen as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise.

This Protective Order does not serve to replace or modify the Stipulated Protective Order entered by the court on July 9, 2018 (the "July 2018 Order"). Where there is a conflict between the terms and conditions of (1) this Protective Order and (2) the July 2018 Order with regard to the Forensic Images or the Information contained in or on the Forensic Images, the terms and conditions of this Protective Order control.

### 3. DURATION

Even after final disposition of this litigation, the obligations imposed by this Order shall remain in effect until the Parties agree otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

### 4. NO WAIVER OF PRIVILEGES OR PROTECTIONS

The Forensic Images include Information and documents that may be protected by the attorney-client privilege, the work product doctrine, rights to privacy, and other privileges or protections. Aspen acknowledges and agrees that by producing the Forensic Images pursuant to this Protective Order, neither APM nor the Employees waive the protections of the attorney-client privilege, the work product doctrine, rights to privacy, or any other applicable privileges or protections. Further, Aspen shall not argue, whether in this action or otherwise, that APM's

production of the Forensic Images pursuant to this Protective Order constitutes any waiver of the attorney-client privilege, the work product doctrine, rights to privacy, or any other applicable privileges or protections.

5. ACCESS TO AND USE OF THE FORENSIC IMAGES AND CONTENTS

5.1. Basic Principles. Aspen may use the Forensic Images and the Information in or on the Forensic Images only for prosecuting, defending, or attempting to settle this litigation, including any related alternative dispute resolution. Aspen further agrees that it may review, use and handle the Forensic Images and the Information in or on the Forensic Images only to the extent that they are directly relevant to the Incident or claimed insurance coverage for the Incident. The Forensic Images and the Information in or on the Forensic Images may be shown to, discussed with, or otherwise disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, Aspen must comply with the provisions of paragraph 13 of the July 2018 Order (FINAL DISPOSITION). The Forensic Images and the Information in or on the Forensic Images must be stored and maintained by Aspen at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

5.2 The Forensic Images. Unless otherwise ordered by the court or permitted in writing by APM, Aspen may provide the Forensic Images or copies thereof only to:

(a) Aspen's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the Forensic Images for this litigation, but who are not officers, directors or employees of either competitors of APM, or of affiliates of competitors of APM;

(b) Aspen, including any officers, directors, and employees (including In-House Counsel) of Aspen;

(c) Experts (as defined in this Order) of Aspen, but only if (1) it is reasonable to disclose the Forensic Images to them for purposes of this litigation; and (2) they are not officers, directors or employees of either competitors of APM, or of affiliates of competitors of APM; and (3) they have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

5.3 <u>Non-Protected Information on the Forensic Images</u>.  Unless otherwise ordered by the court or permitted in writing by APM, Aspen may disclose Non-Protected Information on the Forensic Images only to:

(a) Aspen's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the Information for this litigation, but who are not officers, directors or employees of either competitors of APM, or of affiliates of competitors of APM;

(b) Aspen, including any officers, directors, and employees (including In-House Counsel) of Aspen;

(c) Experts (as defined in this Order) of Aspen, but only if (1) it is reasonable to disclose the Information to them for purposes of this litigation; and (2) they are not officers, directors or employees of either competitors of APM, or of affiliates of competitors of APM; and (3) they have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) The court and its personnel;

(e) Evaluators, mediators, arbitrators or other ADR related professionals and their staff who are appointed by the court;

(f) Evaluators, mediators, arbitrators or other ADR related professionals and their staff who are mutually selected by the Parties for use in this action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) Court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(h) During their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court.

(i) The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

5.4 <u>Protected Information on the Forensic Images</u>. Aspen agrees that it may not use Protected Information on the Forensic Images for any purpose in this action. Aspen agrees that the Aspen Individuals may not search for or seek out Protected Information on the Forensic Images, nor may the Aspen Individuals disclose Protected Information to any person or entity. In the event that an Aspen Individual opens or otherwise views any Protected Information, then: (1) the Aspen Individual must immediately cease viewing the Protected Information, close or exit out of the file or document containing the Protected Information, and never view or open the file or document again; (2) the Aspen Individual may not copy or print out the Protected Information, or take notes about the Protected Information; (3) the Aspen Individual may not give, show, or make the Protected Information available to any other person, including without limitation any Aspen Individual; and (4) the Aspen Individual may not communicate or discuss the Protected Information to or with any other person, including without limitation any Aspen Individual.

6. <u>USE OF NON-PROTECTED INFORMATION</u>.

Aspen may use Non-Protected Information from the Forensic Images in this action, provided that Aspen specifically identifies the Information (e.g., by filename and location), or provides APM with a copy of the Information: (1) where Aspen intends to use the Information in a deposition, at least 14 days prior to the date of the deposition; (2) where Aspen intends to use the Information in a court proceeding or court filing, at least 21 days prior to the date of the court proceeding or court filing; and (3) where Aspen intends to use the Information for some other purpose, at least 21 days prior to the date on which Aspen intends to use the Information for that purpose. APM will then have 10 days to decide whether (1) to decline to produce the Information on the grounds that it is Protected Information; or (2) to produce the Information with its Bates stamp. Further, in the event that APM produces the Non-Protected Information, APM may designate the Non-Protected Information as "Confidential" pursuant to the July 2018 Order.

7. <u>DISPUTES OVER WHETHER INFORMATION IS PROTECTED</u>.

7.1. Timing of Challenges. If the Parties disagree as to whether certain Information constitutes Protected or Non-Protected Information, they must meet and confer. Any Party may challenge a designation that certain Information is Protected at any time. Unless a prompt

challenge to a Designating Party's designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a designation by electing not to mount a challenge promptly after the original designation is disclosed.

7.2  If the Parties disagree as to whether certain Information constitutes either Protected or Non-Protected Information, they must meet and confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge is being made in accordance with this specific paragraph of this Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 10 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

7.3.  Judicial Intervention.  If the Parties cannot resolve a challenge without court intervention, the Challenging Party shall file and serve a motion to challenge the designation under Rule 230 of the Local Rules of this court (and in compliance with Rule 141, if applicable) within 15 business days after the expiration of the ten day meet and confer period (or any additional period agreed to, in writing, by the other party). Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Challenging Party to make such a motion, including the required declaration, within 15 business days (or any additional period agreed to) shall automatically waive the challenge to the designation for each challenged designation. Any motion brought pursuant to this provision must be accompanied by a competent

-9-  Case No. 2:17-CV-02065-TLN-AC
STIPULATED PROTECTIVE ORDER RE FORENSIC IMAGES
14740600.7

declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. All parties shall continue to treat the Information in question as Protected Information under this Order, and as CONFIDENTIAL pursuant to the July 2018 Protective Order, until the court rules on the challenge. To the extent the court rules that any information designated as Protected Information is not entitled to that status, the Designating Party, at its own expense, shall produce the Information in question.

8. <u>MISCELLANEOUS</u>

8.1. Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

8.2. Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

8.3 This Stipulated Protective Order is the product of a joint effort among counsel to both Parties, each of whom has been separately represented in the process, and shall not be construed in favor of or against either Party.

8.4 The Court shall retain jurisdiction following termination of this action for the purpose of enforcing any provisions of this Order.

IT IS SO AGREED.

//

//

//

| | | |
|---|---|---|
| 1 | Dated: August 31, 2018 | HANSON BRIDGETT LLP |
| 2 | | |
| 3 | | By: */s/ Raymond Sheen* \_\_\_\_\_<br>Raymond H. Sheen |
| 4 | | |
| 5 | | Attorneys for Plaintiff<br>AMERICAN PACIFIC MORTGAGE<br>CORPORATION |
| 6 | | |
| 7 | Dated: August 31, 2018 | KAUFMAN DOLOWICH & VOLUCK, LLP |
| 8 | | |
| 9 | | By: */s/ Stefan Dandelles*<br>Stefan R. Dandelles |
| 10 | | Attorneys for Defendant |
| 11 | | ASPEN SPECIALTY INSURANCE<br>COMPANY |

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: October 24, 2018

*[signature: Allison Claire]*

**THE HONORABLE ALLISON CLAIRE**
U.S. District Magistrate Judge

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the "Stipulated Protective Order Re Forensic Images" ("Stipulation") in the case of *American Pacific Mortgage Corporation. v. Aspen Specialty Insurance Company*, Case No. 2:17-CV-02065-TLN-AC, United States District Court for the Eastern District of California. I agree to comply with and to be bound by all the terms of the Stipulation and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulation to any person or entity, except in strict compliance with the provisions of the Stipulation.

At the conclusion of the this action, I agree to destroy all copies of "Forensic Images," as defined in the Stipulation, and all copies of all "Information" (as defined in the Stipulation) in or on the "Forensic Images," that I have in my possession, custody, or control, and to then provide written certification that I have done so to Stefan Dandelles, Esq. of Kaufman Dolowich & Voluck LLP.

I further agree to submit to the jurisdiction of the United States District Court for the Eastern District of California for the purpose of enforcing the terms of this Stipulation, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulation.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____